## REUSCHE & Co. *v.* UNITED STATES (No. 869).[1]

UNSATISFACTORY RECORD.
    The goods were assessed as ceramic colors under paragraph 56, tariff act of 1909. A careful examination of the meager record and proof furnishes no ground for disturbing the decision of the collector or for reversing the decision of the board.

United States Court of Customs Appeals, November 21, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27715 (T. D. 32244).
    [Affirmed.]
    *Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellants.
    *William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Leland N. Wood,* assistant attorney, on the brief), for the United States.

    Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The very meager and unsatisfactory record in this case renders satisfactory decision impossible.

The importations consisted of various powders composed in different proportions of silica, alumina, alkalies, tin, copper, zinc, magnesia, etc., which, upon importation, were classified for dutiable purposes by the collector at the port of New York under the provisions of paragraph 56 of the tariff act of 1909, providing for "* * *; all glazes, fluxes, enamels, and colors used only in the manufacture of ceramic, enameled, and glass articles, thirty per centum ad valorem; * * *."

---

Said paragraph in full reads:

56. All paints, colors, pigments, stains, lakes, crayons, including charcoal crayons or fusains, smalts and frostings, whether crude or dry or mixed, or ground with water or oil or with solutions other than oil, not otherwise specially provided for in this section, thirty per centum ad valorem; all glazes, fluxes, enamels, and colors used only in the manufacture of ceramic, enameled, and glass articles, thirty per centum and valorem; all paints, colors, and pigments, commonly known as artists' paints or colors, whether in tubes, pans, cakes or other forms, thirty per centum ad valorem.

Several contentions are made by the importer, particularly under paragraph 53, that some of the imported materials are "white pigment containing lead, dry or in pulp," or, under paragraph 110, as "fusible enamel."

The collector assessed the merchandise as "ceramic colors" under paragraph 56.

The Board of General Appraisers found it impossible upon the record to fix with any degree of certainty either upon the specific claims relied upon by the protestant or to conclude that any of the claims were tenable. The board stated that if any of the claims were tenable it was that under paragraph 110 as "fusible enamel," but that there is nothing in the record to justify the conclusion that either of the samples was a fusible enamel, and indicated that there was a fusible enamel of commerce.

The Government contends before this court impliedly that there is a fusible enamel of commerce, but has not endeavored at any time to establish this as a matter of proper record.

The import of the decision of the board is that there is not sufficient evidence in the record to warrant the board in disturbing the conclusion reached by the collector.

We, in turn, think that there is nothing in this record that would warrant this court in disturbing the findings of both the collector and the board.

The appellant for this purpose relies solely upon the testimony of the two witnesses who were called and testified before the Board of General Appraisers. Both witnesses were either directly interested in the outcome of the litigation or employed by a firm that was. One of the witnesses was the protestant, now appellant in this case. While this fact in no sense disqualifies a witness, nor necessarily affects the quality of his testimony by reason of that fact alone, when read in conjunction with the testimony given may become an important factor in determining the proper weight to be given his testimony.

The first witness, an employee of a firm importing similar merchandise, testified generally that there was a distinction between underglaze and overglaze colors. That was about the sum of his testimony.

The next witness, the appellant here, proceeded, first, to identify samples of the imported articles. He first addressed his attention to what was invoiced as "enamel white in powder for clocks, No. 37." The sample so admitted as "Ex. 1" was in a powdered form, and was identified by him as the same as "Ex. A," which was in solid form, and which he testified had been imported free under paragraph 576 as "glass enamel, white, for watch and clock dials." Nevertheless, in the brief of counsel for the importer this claim is abandoned as untenable.

The witness then proceeded to state that "these materials," referring to the four samples introduced in evidence, were used on china, earthenware, glass, for tiles, brick, for ironware kitchen utensils, coloring cement, on lamps, electroliers, for artists' colors for artists' use, and for statuary. On cross-examination, however, be admitted that merchandise represented by these particular samples was not, in his knowledge, used for decorating bricks, nor in cement, nor in electroliers, nor in statuary, nor for artists' use.

We have examined the record with great care in an endeavor to discover therefrom a line of demarcation controlling the dutiable classification of this merchandise. We find it impossible. Paragraph 56, quoted, enumerates "glazes," "fluxes," "enamels," and "colors." Paragraph 53, as well as 56, speaks of certain "pigments." Paragraph 110 speaks of "fusible enamel." While practically all of these terms are frequently used by the witnesses and counsel in the testimony in the case, there is nowhere drawn distinctions between them. The testimony speaks of differences between "glazing," "fluxing," and "enamels" and "colors," but fixes no distinction between them.

Upon the whole, one can not read this record with care without being impressed with the distinction between colors to be used in enamels and the enamels as a completed article, and that these importations are colors or color matter to be used in the making up of the enamel rather than the enamel itself. The appellant himself, when on the witness stand, recognized this distinction as applied to this merchandise. He testified (p. 14, Record):

Q. By the way, overglaze colors and enamels are more or less interchangeable terms?—A. Not to any extent. Overglaze enamel colors principally. They are called enamel colors.

So near as we are able to gather from this record that statement of the appellant marks the principal distinction between these importations and enamels. That is to say, overglaze enamel is used as a color in the making of enamels. It is a color, therefore, and one of the materials for making rather than the enamel itself. In any event, it is known as a "color" rather than an enamel.

Reading the record as a whole, we are unable to discover therein any testimony or evidence which would warrant either the Board of General Appraisers in disturbing the decision of the collector or this court in reversing the decision of the Board of General Appraisers.

*Affirmed.*